JOHN T. RICH *v.* SCHUYLER DOANE AND GEORGE W. DOANE.

[IN CHANCERY.]

*Mortgage. Construction of a Conveyance of Premises with a Bond to Reconvey. Chancery.*

The question whether a conveyance of land and the cotemporaneous execution of a bond by the grantee to the grantor to reconvey upon the payment of the consideration of the deed and interest, constitute a mortgage or not, is one of fact, in the solution of which all the circumstances of the case are to be considered as evidence.

Such cases are watched with jealousy by courts of equity, and in doubtful cases the transaction will be regarded as a mortgage. POLAND, CH. J.

In order to make such a transaction a mortgage there must be a debt to be secured thereby. *It seems* that the debt need not be in such form that it can be enforced by action against the debtor. POLAND, CH. J.

The facts in the present case that no note or other evidence of debt was executed by the grantor, and that the grantee went into immediate possession of the premises, were held to be evidence tending to show that the transaction was not a mortgage, while on the other hand, evidence that the grantor was in embarrassed circumstances at the time, and that the price paid for the conveyance was less than the value of the premises, was held to have a tendency to prove the transaction a mortgage.

Under all the circumstances of the present case the transaction was held to be a sale with a right of repurchase, and not a mortgage.

In such a case, if the grantor subsequently claims the transaction to be a mortgage, the grantee may maintain a bill in chancery to have it decreed to be otherwise.

BILL IN CHANCERY. The bill was brought to the June Term, 1861, and set forth that on the 25th of January, 1859, the defendants were the owners of three undivided fifths of a farm in Shoreham, of which the orator owned one-fifth, being the farm of Reuben Doane, deceased, the father of the defendants; that on that day the defendants, in consideration of $2200, sold and conveyed by deed to the orator their interest in such farm; that on the same day the orator executed to the defendants a bond in the penal sum of four thousand dollars, conditioned that if the orator should, on the payment of $2200 by the 15th of February, 1859, with interest thereon from

January 25th, 1859, deed to the defendants the  said  three-fifths of  said  premises so  conveyed to them  by him,  the bond should be  void,  and further conditioned  that if  the defendants should fail to make such  payment  by the 15th of  February, 1859, but should  procure  for the orator a sufficient lease  of that part of the estate of  Reuben Doane, which ẁas  set off  to his widow, Martha Doane, as dower, or in default of procuring  such  lease, should  give  the  orator sufficient security that he should occupy such dower during Martha Doane's life, and should also pay the orator $2200 by the 1st of  December, 1859, and the interest thereon from January 25th, 1859, and  $800 in addition thereto, and  if  in such  case the orator should convey to the defendants the  said  three-fifths of  the  said  premises so conveyed  to him, and also one undivided fifth part of  the  same  premises besides, and should also pay them $100 per annum as rent of the said dower, then also the said bond should be void.

The  bill further set forth that immediately after the  execution of  such conveyance and bond, the orator entered  into possession of  the  premises, and had ever since continued therein, and had , made  improvements thereon, claiming to hold the same as upon a conditional  purchase,  subject only to the condition mentioned in said bond, and not upon a mortgage, and  that the transaction was intended only as a conditional  sale, and that the relation of debtors and creditor was not thereby created,  and  did  not exist between the defendants and the orator ;  that the defendants had not performed any of  the  acts,  stipulated to be done by them in the condition of  said  bond,  but that nevertheless they claimed that the aforesaid transaction constituted only a mortgage of the premises so conveyed from the defendants to the orator to secure the  payment  of $2200 and  interest,  and  asserted that  they should at some future time, according to their convenience, take measures to  enforce their right of  redemption of  the  premises under  such  pretended mortgage;  and  that  therefore  it had become important for the interest of both parties that the nature and  extent of  the orator's interest in the  premises should be determined by the court.

The orator prayed that the court would decree the aforesaid agreement to be a conditional sale of the premises, and declare

the estate of the orator therein absolute and free from any lien, claim, or equity of redemption by virtue of said bond ; or if the transaction aforesaid constituted only a mortgage to the orator, then that the court would decree a foreclosure of the same upon the usual terms.

The answer of the defendants denied that the transaction was anything but a mortgage, and claimed their right of redemption thereunder.

The answer was traversed, and testimony was taken upon both sides, the substantial result of which is stated in the opinion of the court.

In the court below, PIERPOINT, Chancellor, rendered a decree that the agreement set forth in the orator's bill constituted a conditional sale of the premises, and that.the orator's estate therein be declared to be absolute and free from any claim or equity of redemption on the part of the defendants. From this decree the defendants appealed.

*M. L. Bennett,* for the orator.

*E. J. Phelps,* for the defendants.

POLAND, CH. J. The single question to be determined in this case is, whether the conveyance from the defendants to the orator, and the orator's bond for a re-conveyance, constitute a mortgage for the security of a debt or loan, or an absolute conveyance, with a right of repurchase in the defendants.

Upon the face of the papers it is clearly the latter, and as the law allows, and upholds, conveyances of this character, this apparent character must be considered as the true and real one, unless the evidence establishes that it was in fact different.

It is perfectly well settled, however, that, whatever may be the form of a conveyance, evidence is admissible to show that in fact it was intended merely as a security for a debt, or loan of money, and when that is made out, equity will wholly disregard the form of the conveyance, and preserve and protect the right of the debtor or borrower to redeem his estate.

And in such cases courts of equity have followed the rule

which have been applied to all cases of transactions between mortgagor and mortgagee, of regarding the mortgagor as the weaker party, dealing at a disadvantage, and needing protection, so that such cases have been watched with jealousy, and if enough was proved to render it fairly doubtful, whether the conveyance was a mere security for a debt, or an absolute conveyance with a right of repurchase, the premises have been held to be redeemable.

It comes to be then a question of fact, to be determined upon the evidence, whether the conveyance from the Doanes to the orator was a mere security for a loan of money, or an absolute conveyance with a right of repurchase by the grantors. We have the testimony of five witnesses in the case who profess to have known substantially all the facts in relation to the transaction. On the part of the orator, Mr. Conroe, Judge Rich, and the orator himself, testify that the offer of the orator was for a purchase of the land, and the contract as executed was a purchase of the land, and not a loan of money with security. The two defendants do not represent that the money advanced by the orator was called a loan, or that it was so understood or regarded, but they say they were to have the privilege of redeeming. They are not explicit that this was the language used, but seem rather to state this as their idea of the legal effect of the transaction. We do not regard this language as having a very strong tendency to show that the transaction was not what it purports to be on its face, an absolute conveyance with a right of repurchase ; for if the defendants by the contract had the right to again become the owners of the estate by repaying to the orator the purchase money, they might very naturally, and not very inappropriately, call it a right to redeem. The transaction as stated by the orator and his two witnesses, is clearly an absolute sale, with a right of repurchase by the defendants, and if the testimony of the two defendants would make the conveyance a mere security for the money advanced by the orator, the balance of the evidence must still be in favor of the orator.

In all this class of cases, one principle has universally been recognized, that in order to convert a conveyance absolute upon

Rich *v.* Doane et al.

its face into a mortgage, or security merely, there must be a debt to be secured. Some of the cases go so far as to hold that there must be a debt in such form, that it can be enforced by action against the debtor, while others have denied it. We have no occasion now to decide, whether the debt must be such that it could be enforced by action against the debtor, the tendency of later cases seems to be against it. But all agree that there must be a debt or loan to be secured, that the relation of debtor and creditor must exist between the grantor and grantee, in order to lay the foundation for converting an absolute deed in form, into a mere security. In this case there was no note or bond or other evidence of debt executed by the defendants, and though this is by no means conclusive, still it is a circumstance favorable to the orator, as if the parties intended the conveyance merely as a security for a loan or debt, it would have been natural that the ordinary evidence of a debt should have been required and given.

But from all the evidence there appears to have been nothing said about a loan, or debt, or mortgage ; the whole talk was of a sale and purchase, and one of the defendants states in his testimony that they tried to get the orator to give a larger sum, which tends strongly to show that the defendants did not understand that the conveyance was merely a mortgage or security for the sum advanced. Another fact tends strongly to the conclusion that the conveyance was not intended as a mere security for a loan of money ; that is, that the orator was to have, and did have, the immediate possession and use of the premises.

The argument for the defendants has been based principally upon the fact, that they were at the time of the conveyance in embarrassed circumstances, and under the necessity of raising money to meet existing liabilities upon them ; and that the sum paid by the orator was less than the fair value of the premises conveyed to him by the defendants. Evidence of this character is always admissible and material in determining whether a conveyance is absolute, or only a security, because it is more reasonable that a man should give a security upon his property for a sum less than its value, than that he should part with it by an absolute sale, for such an inadequate remuneration. So a

borrower in distress would be more likely to submit to put his property in a condition where his right to redeem might be put in jeopardy, perhaps wholly lost, than one standing in a more independent position, and dealing at no such disadvantage.

But these circumstances will not make an absolute conveyance a mortgage, when it is shown clearly, or conceded, that the conveyance was in fact absolute; they are only evidence to be weighed, as to its real character. A conveyance which was fully understood and intended to be absolute, might be obtained under such circumstances of distress on the part of the grantor, and for such an inadequate price that a court of equity would set it aside as unconscionable, but they would not for such reason alone, decree it to be a mortgage. This is not the view in which this evidence is urged in the present case.

It is difficult to determine with anything like accuracy from the evidence in the case, what was the fair value of the share of the farm conveyed by the defendants to the orator. The defendants owned but three-fifths of the farm, and the orator owned but one of the other fifth parts. It was encumbered by a right of dower in the widow, and a right of homestead, and a portion of it was subject to an annual rent.

It is manifest that under such circumstances, the defendants could not reasonably expect to get so great a price in proportion, for their shares, as the whole farm would command, and that the price would be reduced by the incumbrances, much more than they could be mathematically calculated. The price the orator paid the defendants for their shares, was more than he paid for the share he had already purchased, and but a trifle less than he was to sell his share to them for, in case they chose to repurchase, and to take his share, as they were to do in such case.

We are inclined to believe that the sale to the orator was for somewhat less than the fair value of the premises, but the inadequacy was not so great, as to furnish very strong evidence that the conveyance was only a mortgage in disguise.

The conduct of the parties since the conveyance, seems to be entirely in harmony with the idea, that when the defendants allowed the time to expire without repurchase, they had no further right. The orator so treated it, he has sold a part of the

premises, and remained in possession of the residue, making no call for payment on the defendants. The defendants appear to have made no objection to these acts of absolute ownership by the orator, and no effort or offer of payment, as if they were the orator's debtors, and the conveyance but security.

But what is most satisfactory to us that this conveyance was not understood by the parties to be but a security for the money advanced by the orator, are the various provisions in the bond executed by the orator to the defendants, of the same date with the deed, and the other bond from the defendants to the orator.

The defendants contracted that the orator should have a lease, or the undisputed possession of the widow's dower, by paying one hundred dollars yearly for the use of the same.

The orator contracted to convey his fifth part of the farm to the defendants, for eight hundred dollars, in case they repaid the twenty-two hundred dollars he had paid for the farm, and the defendants were not entitled to make such repurchase without becoming purchasers of the orator's share in the farm. Now it is not pretended that all these various stipulations were not *bona fide*, and intended to be fully carried out. But they are wholly inconsistent and incompatible with what the defendants now claim, that the deed was a mortgage to secure the sum advanced by the orator.

We are of opinion, therefore, that the defendants have wholly failed to show that the true character of this conveyance was different from that appearing upon its face, and no question has been made, but that in that event the application of the orator to have its true character declared was to the proper jurisdiction of the court. The decree of the chancellor is affirmed, and the case remanded to be perfected.