Becker vs. Howard.

BECKER, Appellant, vs. HOWARD, Respondent.

*December 7, 1889 — January 7, 1890.*

*Deed absolute or mortgage? Evidence.*

1. To convert a deed absolute into a mortgage, the evidence should be so clear as to leave no substantial doubt that the real intention of the parties was to execute a mortgage.

2. In an action to have a deed declared a mortgage and to redeem therefrom, it was undisputed that the deed was executed and recorded in 1858; that thereafter, until 1887, the plaintiff never made any claim to the land or to any interest therein, and never paid any taxes thereon, or in any way exercised any ownership thereof; that on the settlement of other loans made to him by the defendant no claim was made by either party that the matter of

this deed was an unsettled transaction; that the defendant paid all the taxes, and that the plaintiff knew he was paying such taxes as early as 1869; that in 1870 the defendant commenced selling and conveying portions of the land, and continued to do so until shortly before the commencement of the action in 1887; and that the defendant never claimed that the plaintiff owed him the amount paid to plaintiff when the deed was given. The evidence, showing the above facts and being in other respects contradictory and unsatisfactory, is *held* to sustain the findings of the trial court to the effect that the deed was not given as security for a debt.

APPEAL from the Circuit Court for *Douglas* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was commenced by the appellant for the purpose of having a deed, executed by him on the 4th day of October, 1858, and which was duly recorded in the office of the register of deeds of Douglas county in this state on the 9th day of November, 1858, declared a mortgage, and to redeem said mortgage, and compel the defendant to render an account for the value of such of the lands as have been sold by the defendant since the execution of said deed. The deed was a warranty deed, containing the usual covenants, and conveyed to the respondent 1,055 acres of land in said county. The consideration named in the deed is $1,200. The defendant denied that said deed was given to secure a debt due to him from the appellant, or for money loaned by him to the appellant, and insisted that he purchased the said lands from the appellant at the time of the execution of such deed for the sum of $1,200, then paid by him to the appellant.

The case was tried by the court without a jury, and the learned circuit judge found in favor of the defendant, and dismissed the plaintiff's complaint, and from the judgment of the court dismissing such complaint the plaintiff appeals to this court.

The learned circuit judge made and filed the following findings of fact, among others, viz.:

"*First.* On the 4th day of October, 1858, the plaintiff, under the pressure of extreme financial or business necessity, applied to the defendant for a loan of $1,200, offering as security therefor his personal obligation secured by a mortgage on the lands mentioned in the complaint, amounting to about 1,055 acres, of which he was the owner in fee.

"*Second.* The defendant refused to grant the loan so asked for, and refused to enter into any contract which, in his view, would involve the loan of the money and taking such security therefor.

"*Third.* It was finally, however, on that day, agreed by parol between the parties that the plaintiff should sell and convey by absolute deed to the defendant the said lands, for the price of $1,200, to be paid therefor by the defendant; and it was at the same time further and in like manner agreed between them that the defendant should reconvey the same lands to the plaintiff, at any time that he should be required to do so by the plaintiff, upon the payment of the amount of such purchase money, $1,200, with interest from that day at the rate of five per cent. a month."

"*Sixth.* There was no understanding between the parties that the plaintiff incurred any indebtedness to the defendant on account of the said sum of money so paid to the plaintiff, and no evidence of indebtedness was, on account thereof, given by the plaintiff to the defendant, and no promise, by parol or otherwise, to repay the said sum was made by the plaintiff to the defendant, in any sense of a contract to that effect; the plaintiff's testimony that he was to repay the same being construed by me as indicating that he declared his intention to avail himself of the option so given him to repurchase, and not as importing a promise to repay, accepted as such by the defendant."

" *Ninth.* The said lands were all wild and uncultivated and unoccupied lands, and have so remained, except that some of the parcels which were sold by the defendant have, within about four years last past, come into use and occupation as town lot property in West Superior, a place begun and developed within that time.

" *Tenth.* At the time of said transaction between said parties, the value of said lands, measured by any market price thereof, was not susceptive of accurate estimation, for the reason that an extraordinary financial depression, general throughout the country, affected very disastrously all interests at Superior, near which these lands were situated, and particularly town lot speculation, and town lot prospects, with reference to which almost exclusively these lands had commercial value; and though, with reference to the uncertain prospects of an indefinite future, these lands were estimated, by different persons, as competent as any to form a judgment, to be worth from $3,000 to about $12,000 altogether, yet for reasons above stated they were not practically salable for even the lesser of said sums, and there is no ground for holding that they could have been sold to any one for a price greater than the sum of $1,200.

" *Eleventh.* The defendant, at different times between 1872 and 1881 inclusive, sold and conveyed in fee parcels of said land, amounting altogether to four hundred and fifteen acres, receiving therefor $3,500. Defendant, ever since the execution of said deed by the plaintiff, has paid the taxes on all such lands, except taxes on parcels of land so sold by the defendant, accruing since the sale of the same, respectively. The amount of taxes so paid does not appear."

" *Thirteenth.* From the time said deed was executed by plaintiff in 1858 until the spring of 1887, though for some years of that period both parties lived in Superior (the plaintiff living in St. Paul, after living in Superior), there

was no intimation made by either party to the other that the conveyance of said land by the plaintiff, as aforesaid, was intended to operate otherwise than as an absolute and indefeasible transfer of the title to said lands in fee, or that the delivery of said sum of $1,200 to the plaintiff by the defendant was other than a payment of the purchase price of said lands.

"*Fourteenth.* There was no very material increase in the market value of said lands until three or four years before the commencement of this action, and the enormous increase in value which some of them, being of those defendant has sold as aforesaid, have attained, did not take place until 1886 or 1887; 'and the plaintiff had many years before — I should say as early as 1868 — virtually abandoned the idea of repurchasing or redeeming the said lands from the defendant, and had reason to know that the defendant so understood.'

"*Fifteenth.* It is apparent that the plaintiff was stimulated to set up a claim for such lands by an extraordinary increase in the value of certain parcels of them, arising from town-site settlement improvements and speculations at West Superior in 1886 and 1887, and that but for such increase, or some great increase in the value of said lands, the plaintiff would not make any claims on the defendant for the same.

"Though the facts as above stated accord with my impression as derived from the whole evidence, I do not feel sure that the case made by the evidence is not one which should be disposed of (without reference to the question raised as to a loan of money by the defendant, or a repurchase of the land by the plaintiff) simply by finding that the plaintiff's claim, in view of the conflict of testimony, is not sustained by proof of that clear and convincing character which is requisite to turn an absolute deed into a mortgage security."

Also the following conclusions of law:

"*First.* The said transaction, in which the said lands were so conveyed by the plaintiff to the defendant and the said sum of $1,200 was so paid by the defendant to the plaintiff, amounted to an absolute conveyance of the land on one hand and the payment of the agreed price therefor on the other hand, and was not in the nature of a loan of said money and of a mortgage of said lands to secure its repayment."

"*Third.* If the statute of limitation does not apply to the case, still I would deem the plaintiff's claim stale in equity, and barred by his laches, long silence, and delay in bringing his action."

"*Fourth.* The defendant is entitled to a judgment of dismissal of the complaint, with costs against the plaintiff."

The appellant excepted to the 2d, 3d, 4th, 5th, 6th, 7th, 8th, 10th, 12th, 14th, and 15th findings of fact, and the 1st, 2d, and 3d conclusions of law, and also filed a general exception that, upon the whole evidence, the plaintiff is entitled to the relief prayed for.

The defendant excepted to that part of the third finding of fact which reads as follows: "And it was at the same time further and in like manner agreed between them that the defendant should reconvey said lands to the plaintiff at any time he should be required to do so by the plaintiff, upon the payment of the amount of such purchase money, $1,200, with interest from that day at the rate of five per cent. a month." And also to that part of the fourth finding of fact which reads as follows: "That the plaintiff executed the deed to the defendant in accordance with such agreement" (meaning the agreement mentioned in the third finding of fact).

For the appellant there was a brief by *Hiram Hayes* and *J. B. Brisbin*, and the cause was argued orally by *J. B. Brisbin* and *W. F. Vilas.*

*J. J. Egan* and *M. D. Munn*, for the respondent.

TAYLOR, J.   Upon the whole evidence in the case, and after having carefully considered the able and exhaustive arguments submitted on the part of the learned counsel for the appellant, we are of the opinion that the evidence totally fails to make out a case for any relief on the part of the plaintiff; and while we would have been better satisfied with the findings and judgment of the learned circuit judge had he placed his judgment on the ground that there was not sufficient evidence in the case to authorize the court in finding that the deed was given as security for the loan of money by the defendant to the plaintiff, or that it was an absolute sale upon condition that the defendant would reconvey to the plaintiff on the payment of $1,200 and interest thereon at five per cent. a month, still such latter finding is not inconsistent with the judgment rendered by such court, and is therefore no ground for reversal of such judgment.

There are some facts established in the case which are not controverted by the appellant, and which, in our opinion, ought to be conclusive upon him that the warranty deed made in this case in 1858 was neither intended as a mortgage security for the loan of $1,200, nor as a conditional sale giving him the right to repurchase the property upon the payment of $1,200 and interest at five per cent. per month, or at any other rate of interest.   The undisputed facts referred to are that after such deed was recorded, on the 9th of November, 1858, and down to 1887, the plaintiff has never made any claim to any of said lands, has never paid any taxes thereon, or in any way exercised any ownership thereof, or claimed any interest therein; that during all that time the plaintiff has never claimed to the defendant that he had any interest in said land, or any part thereof; that during that time, and about ten years after such deed was executed and recorded, the plaintiff made a settlement of other loans of money made by the

defendant to the plaintiff; and that on such settlement no claim was made by either party that this transaction was an unsettled matter between them. It also is undisputed that after the date of said deed, and down to the year 1887, the defendant paid all the taxes on said lands, and without making any claim on the plaintiff, and the fact that the defendant was paying such taxes was known to the plaintiff at least as early as 1869; that as early as 1870 the defendant commenced selling and conveying parts of this land, and has continued so to do from time to time, down to a short time before the commencement of this action, which was in the latter part of the year 1887, without any objection made by the plaintiff as to his right to make such sales. It is true the plaintiff testified that he never knew that defendant was making any such sales until 1887. If he did not know of such sales being made, it would be a good answer to the claim that he made no objection, but it would not do away with the force of the inference that he did not suppose he had any interest in such lands. If he supposed he had any interest in said lands, it is not probable that he would have entirely neglected to make any inquiries about them until after the expiration of twenty-nine years after he conveyed them by a warranty deed to the defendant.

Under these undisputed facts, it is evident that in order to entitle the plaintiff to have this warranty deed declared a mortgage and security for a loan of money, and to compel the defendant to account for the land unsold and for the value of that sold, he must make out a very clear case. All reasonable inferences are against his claim. To establish his claim, he has introduced no evidence, except such as rests in parol and is dependent for its conclusiveness upon the vague and uncertain recollection of the parties to a transaction which took place thirty years before the date of the trial. There is this in the undisputed evidence which

is almost conclusive in favor of the defendant's version of the transaction of 1858: The conduct and acts of the defendant in relation to these lands are entirely consistent with his claim that he bought the lands of the plaintiff, and that he did not take or hold them as security for a loan, nor make any agreement that he would reconvey them to the plaintiff upon any terms.   He has always exercised such control of the lands as an owner in fee would exercise; he has paid the taxes, and made sales, giving deeds warranting the title; and he has never made any claim that the plaintiff was in any way indebted to him for the $1,200, the consideration mentioned in the deed, nor has he in any way recognized the right of the plaintiff to repurchase these lands at any price.   On the other hand, the acts and conduct of the plaintiff in regard to these lands have been quite consistent with the claim of the defendant that he was the absolute owner, and inconsistent with the claim that he had an interest in the lands as mortgagor.

As was to be expected, the parol evidence as to the nature of the transaction in 1858, as attempted to be detailed by the parties on the trial, is contradictory and unsatisfactory, and there is certainly no evidence, even on the part of the plaintiff, which establishes the fact that the transaction was a mortgage, or that it was intended as such by the parties.   Even the testimony of the plaintiff himself, if there were nothing in the case which conflicted with his statements, does not show with any clearness that the transaction was understood by the parties to be a loan of money by the defendant to the plaintiff, and security given for such loan by making the deed instead of a mortgage.   The plaintiff admits that the defendant refused to take any mortgage security from him for his money, and insisted upon an absolute deed of the lands for the money paid; and he says " he [the plaintiff] was to give him a deed for the lands and the Thompson note, with the understanding

that he should redeed the property on being paid the $1,200, with interest at five per cent. a month on the loan," and that no time was specified for the payment. The plaintiff, however, fails to state that the defendant agreed to his proposition, and the subsequent acts of both parties tend strongly to disprove that any such agreement was made. The proposition to pay five per cent. a month, if the transaction was a loan, must have been known to be a usurious and illegal contract; and it is not probable that the defendant would ever have consented to a proposition which left him at the mercy of the plaintiff, and, if such contract were in fact made, would amount to a loan of the $1,200 for an indefinite time without any interest at all. In order to make such a contract of any binding force, it could only be so upon the theory that the parties agreed that the absolute title to the property should pass to the defendant by the deed, and that the plaintiff might repurchase the land within a reasonable time thereafter by paying $1,200, increased by five per cent. per month from the date of the deed until the plaintiff offered to repurchase on the terms stated. And this is the view of the case which seems to have been, partially at least, adopted by the learned circuit judge.

The strength of the plaintiff's argument to establish the fact that this transaction was a loan, and not a sale, is, first, that the price paid by the defendant for the lands was inadequate. Upon this point we agree with the learned circuit judge that there was not at that time, and for many years thereafter, any certain cash value for the lands in controversy; and the evidence shows that, for over twenty-five years after the transaction, the lands were not and could not have been sold for enough to pay the taxes and interest thereon at seven per cent., and the $1,200, with like interest thereon. This argument cannot have great weight in the determination of the controversy.

The only other thing which would tend to show that the transaction was intended as a loan is the fact that a note of one Benjamin Thompson for $2,200, and which had about three years to run before it became due, was either given to the defendant or deposited with a third person for some reason. The plaintiff says this note was given to the defendant as additional security for the $1,200. The defendant says he never had the note, and that it was left with a third person, together with the deed, as security for his money while the deed was kept off the record to enable the plaintiff to go to Michigan and make an attempt to raise the money there of his friends, and repay it to the defendant, and so settle the matter without putting the deed upon record. That there was an agreement to keep the deed off the record for a time, to enable the plaintiff to raise the money if he could from his friends in Michigan, and so prevent the deed from being recorded, is admitted by all parties; and the record shows that the deed was dated October 4, 1858, and was not recorded until November 9, 1858, and plaintiff says this was after his return from Michigan and his failure to raise the money there, and then the deed was placed on the record with his assent. The parol evidence as to the purpose of placing this note either in the hands of the defendant or of a third person is conflicting, and is the testimony of the parties. But there is an undisputed fact in the case which tends strongly to confirm the statement made by the defendant upon this question, and which militates with great force against the statement made by the plaintiff. It is this: The defendant has never made any claim to the note since the deed was placed on record. He says he never had it in his possession, but, if it be admitted that he had it in his possession, he never made any attempt to collect any money on it, and it is admitted by the plaintiff that it was afterwards delivered to him by the defendant, and that he has collected several

hundred dollars thereon. The fact that defendant did not attempt to collect the note if he had it in his possession at all, and the fact that he delivered it to the plaintiff without having made any attempt to collect any part of it, strongly corroborates his statement that he had no claim to it after his deed was recorded; and the receipt of the note by the plaintiff, without any explanation, is confirmatory of the defendant's statement as to the note.

The evidence on the part of the defendant, explanatory of the claim that the note was given to him as security for the $1,200, was, we think, clearly admissible under the pleadings. The plaintiff in his complaint alleges that the note was given with the deed to the defendant as security for the loan of $1,200, and the defendant denies this allegation in his answer, and denies that the plaintiff ever assigned said note to him at any time, or that he ever received the note from the plaintiff. The evidence offered by the defendant, and objected to by the plaintiff, clearly tended to prove the issue made by the pleadings upon this question.

The first, second, sixth, and tenth findings of fact by the circuit court are sufficient to sustain the conclusions of law and the judgment of the circuit court thereon, and, as we think these findings are sustained by the weight of evidence, the other findings in the case become immaterial, and, whether sustained by the evidence or not, the judgment must be affirmed. It is unnecessary to discuss the question in regard to the statute of limitations applicable to the case, which was discussed by the learned counsel for the respective parties upon the hearing in this court.

This case is pre-eminently one to which the rule laid down by this court in *Kent v. Lasley*, 24 Wis. 654; *Newton v. Holley*, 6 Wis. 592; *Lake v. Meacham*, 13 Wis. 355; *Fowler v. Adams*, 13 Wis. 458; *Harrison v. Juneau Bank*, 17 Wis. 340; *McClellan v. Sanford*, 26 Wis. 595, 607; *Sable v. Maloney*, 48 Wis. 331, 333; *Schriber v. Le Clair*, 66 Wis.

579, 599; *McCormick v. Herndon*, 67 Wis. 648,— should be applied. The rule stated in those cases is as follows: " To convert a deed absolute into a mortgage, the evidence should be so clear as to leave no substantial doubt that the real intention of the parties was to execute a mortgage security." The evidence in the case at bar entirely fails to bring the case within the rule above stated; and all the subsequent conduct of the parties for nearly thirty years after the transaction is inconsistent with the claim now made by the plaintiff.

*By the Court.*— The judgment of the circuit court is affirmed.