# WHEELING

## FRIDLEY *v.* SOMERVILLE.

### Submitted March 13, 1906.   Decided June 13, 1906.

1.  MORTGAGES---*Deed Absolute in Form---Burden of Proof.*
    The burden of proving that a deed absolute on its face is a mort-
    gage securing a loan, is on the party alleging it. The intention of
    the parties to the deed at the time it was made is controlling. If,
    after the deed was made and the transaction completed, there
    existed no indebtedness from the grantor to the grantee on
    account of the consideration for the deed, it is not a mort-
    gage. (p. 280.)

2.  SAME---*Evidence.*
    In a suit to have a deed absolute on its face declared to be a
    mortgage, the presence of what are termed the *indicia* of a mort-
    gage, arising from the circumstances attending the trasaction,
    does not prevent the consideration of other evidence, both direct
    and circumstantial, bearing upon the question of the intent of the
    parties at the time the deed was made; and such other evidence

may be of such character, and so potent and convincing as to overcome the weight to be given to any or all the *indicia* of a mortgage. (p. 280.)

3. SAME—*Question for Court.*

It is for the court to determine, from all the competent evidence in the case, both direct and circumstantial, including any of the *indicia* of a mortgage present, whether or not the deed in question was intended by the parties, at the time it was made, to be a mortgage or an absolute conveyance. (p. 280.)

Appeal from Circuit Court, Mason County.

Bill by Charles L. Fridley against E. J. Somerville. Decree for plaintiff. Defendant appeals.

*Reversed.*

RANKIN WILEY and C. E. HOGG, for appellant.

BELLER & BRAGG, for appellee.

COX, JUDGE.

E. J. Somerville complains of a final decree entered by the circuit court of Mason county, in a chancery cause in which he is defendant and Charles L. Fridley is plaintiff. By the decree complained of, a deed absolute on its face, made by Fridley to Somerville, purporting to convey 66 1-4 acres of land in said county, was declared to be a mortgage securing to Somerville the sum of $150.00 with interest from the 13th day of December, 1904, and the further sum of $13.12, the amount of taxes paid on the land by Somerville.

The sole object of the suit on the part of Fridley was to have the deed declared to be a mortgage instead of an absolute conveyance. The question for determination is, whether or not, upon the whole evidence, the action of the court in declaring the deed in controversy to be a mortgage was erroneous. The deed, absolute on its face, was executed, acknowledged, delivered and recorded on the 13th of December, 1904. It acknowledged the receipt of $225.00, the consideration named therein. The plaintiff by his bill in substance alleges that, at the time he executed and delivered the deed, and for some time thereafter, he supposed that it was a deed of trust securing a loan of $150.00; that the deed was not read to or by him before signing and delivery; that, from the declarations and representations of the defend-

ant, he believed it to be a deed of trust; that defendant fraud-
ulently represented the deed to be a deed of trust; that plaintiff
is a man of no education; while the defendant is an educated
man and an attorney at law by profession; that no sale of said
land was ever in fact made by plaintiff to defendant; that, as
soon as plaintiff learned that said deed was not a deed of trust
securing a loan, he offered to repay to defendant the $150.00
received from him at the time the deed was made; that
plaintiff demanded a reconveyance of the land in fee, and by
his bill offers to repay the $150.00 and interest. The de-
fendant by answer denies all the material allegations of the
bill against him, including the allegation that the deed was
intended to be a mortgage or was misrepresented.

The value of the tract of land in fee and unencumbered, at
the time the deed was made, is variously estimated by the wit-
nesses. We think from the evidence that $10.00 per acre may
be said to have then been the fair value of the land. The plain-
tiff's wife, whose age does not appear from the record, did not
join in the deed. At the time the deed was executed, and as a
part of the transaction, the defendant executed and delivered
to the plaintiff a writing as follows:

"Whereas, The undersigned E. J. Somerville has this the
13th day of December, 1904, purchased from C. L. Fridley a
tract of land in Cooper District, Mason county, West Vir-
ginia, containing 66 acres, and,

"Whereas, The said E. J. Somerville is willing that in the
event Lillie Gardner *shoul* pay to said E. J. Somerville the
sum of $225.00 within four months from this date, that then
he, the said E. J. Somerville, will deed said tract of 66 acres
to said Lillie Gardner.

"Now, therefore, this agreement witnesseth: That said
E. J. Somerville does hereby agree that if the said Lillie
Gardner within four months from this date, pays to said E.
J. Somerville, the sum of $225.00, that then the said E. J.
Somerville will make said deed to her, the said Lillie Gard-
ner, with covenants of special warranty. But if the said sum
of $225.00 is not paid within said four months then the right
of said Lillie Gardner to buy said land shall cease and deter-
mine, and this contract is to be null and void.

"Witness the following signature and seal.

E. J. SOMERVILLE, (Seal.)"

Lillie Gardner, therein mentioned, was the married daughter of the plaintiff, and this writing was afterwards delivered to her.   At the time the deed was made, the plaintiff executed a bill of sale of his personal property on said land, including live stock and farm implements, to Lillie Gardner, who afterwards sold said personal property at public auction.   Some time after the execution of the writing to Lillie Gardner above mentioned, which writing will hereafter be called an "option," the defendant procured from her a release as follows:

"In consideration of E. J. Somerville assisting me in the purchase of a lot from H. L. Robey in North Point Pleasant, I hereby release all the right, title and interest I have in and to the 66 acre tract of land he purchased from Charles L. Fridley in Cooper District, an option to re-purchase the same being given by said E. J. Somerville in a written contract signed by said E. J. Somerville; and in consideration of One Dollar, cash in hand paid, the receipt of which is hereby acknowledged, I hereby deliver up possession of said contract, together with any and all rights I have in and to the same, or to the land by virtue of said contract.

"Witness my hand and seal this 25th day of January, 1905.

"Lillie B. Gardner (Seal)."

After considering all the evidence, facts and circumstances shown by this record, we are clearly of the opinion that the deed in question, and the option to Lillie Gardner, state truly the transaction between the plaintiff and the defendant, except as to the money consideration for the deed.   The money consideration, according to the evidence, was $150.00 paid to plaintiff, and $13.12 to be paid on taxes then accrued against the land, and $10.00 attorney's fees to be paid to Duffy, plaintiff's attorney in this transaction.   It seems to us that the evidence overwhelmingly sustains the theory that the intent was to make an absolute conveyance of the land, subject alone to the right of Lillie Gardner to purchase at the price of $225.00 within four months under the option.   The evidence is voluminous.   To detail it *in extenso* would require much space and would answer no useful purpose.   Parol evidence, to prove a conveyance absolute on its face to be a mortgage, must be clear and unquestionable.   *Way* v.

*Mayhugh*, 57 W. Va. 175.    A decree determining a question
of fact will be reversed, upon appeal, where it clearly ap-
pears that such decree is against the weight and preponder-
ance of the evidence.     *Wallace* v. *Douglas*, 58 W. Va. 102,
(51 S. E. 869).     Three of the four persons present when
this transaction took place, namely: Duffy, plaintiff's attor-
ney, the defendant and the defendant's brother, testify in
unmistakable language that the deed was read to the plain-
tiff before he signed and acknowleded it; that it was not mis-
represented to him; that he thoroughly understood it, in all
of its parts and terms; that it was prepared by his at-
torney; and that, as executed, it embodied the intention and
agreement of both the parties to it.     The plaintiff alone,
whose evidence is in many respects unsatisfactory and self-
contradictory, testifies that the deed was not according to the
agreement of the parties, and that he did not understand
that the deed conveyed the land absolutely when he signed
it, but that he supposed it was a deed of trust to secure the
money received by him, and that it was so represented to
him before he signed it.     The theory that the deed and op-
tion show truly the intent of the parties is further sustained
by the admissions and declarations of the plaintiff made when
not a witness and previous to testifying, indicating clearly
that he understood the nature and effect of the deed and op-
tion, and also by evidence tending to show that the plaintiff
before the deed was made offered to sell the land to another
party for $150.00.

It is contended that the *indicia* of a mortgage are present
in the circumstances attending this transaction between
plaintiff and defendant, and should control in reaching the
conclusion that the deed is a mortgage. This Court has at dif-
ferent times recognized certain circumstances as *indicia* of a
mortgage, or, in other words, as having great weight in leading
to the conclusion that a deed absolute on its face is a mort-
gage.    These *indicia* are collated by Mr. Hogg in his work
on Eq. Prin. p. 715.    They are:    First:    The admission of
the parties that the grantor, after the execution of the deed,
owes the consideration thereof to the grantee as a debt.
Second:    The gross inadequacy of the consideration.    Third:
The retention of the possession of the land by the grantor
for many years after making the deed, without the payment

of any rent. Fourth: That there had been negotiations pending between the parties for a loan. Fifth: That the grantor was hard pressed for money, and that the grantee was a known money-lender. Sixth: That the parties did not apparently consider or contemplate the quantity or value of the land when the deed was made. We shall consider these circumstances or *indicia*, in view of the evidence in this case.

First, the admission of the parties that the grantor, after the execution of the deed, owes the consideration thereof to the grantee as a debt. In this case, there is no evidence showing that the grantee admitted, after the execution of the deed and the completion of the transaction, that the grantor still owed to the grantee the consideration for the deed, or any part of it. It is said in the opinion of this Court in the case of *Sadler* v. *Taylor*, 49 W. Va. 104, delivered by JUDGE POFFENBARGER, upon an exhaustive review of the authorities, that where proof offered to show that a deed absolute on its face is a mortgage consists of parol declarations, it must be clear and strong. "So strict is this requirement indeed that I have been unable to find any case in which the proof did not go to the extent at least of an admission on the part of the grantee that the money represented in the transaction was a loan, coupled in each case with one or more of the circumstances which have been judicially determined to be *indicia* of the real contract having been a loan, or fraudulent conduct on the part of the grantee."

Second, the gross inadequacy of the consideration. It is claimed that the consideration was grossly inadequate. This is earnestly relied on, not only as a circumstance tending to show a mortgage, but as an independent ground for setting aside the deed. As we have said, the fair value of the land in fee, unencumbered, as shown by the evidence, was $10 per acre, or $662.50 for the whole tract. The consideration named in the deed was $225.00; but the fact is that the defendant paid $150.00 to plaintiff, $13.12 taxes, and was to pay $10.00 to plaintiff's attorney. It is explained by the evidence that the consideration was named in the deed at $225.00 to correspond with the price at which Lillie Gardner was given the option to purchase. Under this deed, if ab-

solute, the defendant took the land subject to the contingent right of dower of the plaintiff's wife. In the opinion of some of the witnesses, this fact would greatly depreciate the value of the land. It was also subject to the option to Lillie Gardner. While neither the deed nor the option gave the right to the plaintiff to re-purchase the land, or to have it reconveyed to him upon the performance of any condition, yet these papers, when taken together, did impose on the defendant the condition that, upon the payment of $225.00 by Lillie Gardner within four months, he should convey the land to her absolutely. These facts are vital upon the question of inadequacy of consideration. A natural motive existed for the plaintiff to provide for his daughter. It appears that he intended in the future to make his home with her. At the time he made the deed, he made the bill of sale to her of his personal property. It is fair to presume that the plaintiff intended to benefit his daughter, in providing that she should have time in which to purchase the land at $225.00, and that he expected her to do so. Owing to the facts mentioned, it is not apparent that the plaintiff was conveying the land for a grossly inadequate consideration. Inadequacy of consideration cannot, under these circumstances, be said to be so gross as in itself to amount to proof of fraud. *Deepwater Council* v. *Renick*, decided by this Court at this term. The fact that the defendant afterwards procured a release of the option, and of all the rights of Lillie Gardner under it, is immaterial. That was a matter of subsequent contract between them, and could in nowise affect the adequacy of the original consideration. Under the circumstances, inadequacy of consideration loses its potency in leading to the conclusion that the deed in question is a mortgage.

Third, the retention of the possession of the land by the grantor for many years after the making of the deed, without payment of any rent. This circumstance is notably absent in this case. It appears that the plaintiff, at the time the deed was made, had fully determined to change his place and manner of living. He owed about $150.00, which he desired to pay. He had made previous efforts to borrow this sum, but had failed, because his wife would not join in a deed of trust. There is evidence tending to show that he expected

to get rid of his present wife and her children.   He says that he could no longer make a living on the farm for himself and family.   By the deed he obtained the $150.00 he desired, disposed of his farm, and secured to his daughter the right to buy the farm at an advance of about $50.00.   After the deed was made, he went out of possession of the farm, and his personal property thereon was sold at auction by his daughter.   Thus, all his connection with the farm ceased, and he stayed for a time with his daughter.   It is true that before this suit was brought he and his wife moved back to the farm; but it is not shown that he did so with the consent of the defendant.   It is claimed that the defendant did not go into possession after the deed was made.   It is true that he, being a resident of Point Pleasant and engaged in the practice of law, did not take actual physical possession of the land; but he claimed ownership of it, and negotiated about the sale of it.

Fourth, that there had been negotiations pending between the parties for a loan.   This circumstance is present in this case.   The plaintiff, accompanied by his attorney, applied to the defendant for a loan of $150.00, but was refused, because defendant was then told that plaintiff's wife would not join in a deed of trust securing the loan.   Afterwards, the transaction resulting in the deed and option was concluded between them.

Fifth, that the grantor was hard pressed for money, and that the grantee was a known money-lender.   It appears that plaintiff was in somewhat straitened circumstances; that he owed about $150.00, and desired to pay it.   It does not appear that the defendant was a known money-lender.

Sixth, that the parties did not apparently consider or contemplate the quantity or value of the land when the deed was made.   We are unable to determine from the evidence that the parties did not contemplate the quantity or value of the land.   It is shown that the defendant was not acquainted with the land, and had never met the plaintiff until the day the deed was made.   The quantity of the land is named in the deed and in the option; and the defendant testifies that he relied upon the representations of plaintiff as to the land and its value.   This being true, we do not think that

the quantity and value of the land was apparently without the consideration of the parties.

This concludes the consideration of the *indicia* of a mortgage in the light of the evidence in this case. Some of the *indicia* most material are absent. In the opinion in the case of *Sadler* v. *Taylor*, it it said, in relation to the *indicia* of a mortgage, that "it is found in some cases that a single dominant fact, indicating a contrary intention, has been held to preponderate over practically all of them combined, as in the case of *Mathews* v. *Sanford*, 26 W. Va. 386." It is further said: "There is one circumstance, which, if found to exist in transactions of this kind, determines the question absolutely, namely, if after the deed is executed no debt remains due from grantor to the grantee, the instrument is not a mortgage." It seems perfectly natural that this circumstance should be conclusive against the theory of a mortgage. It involves the very substance of the issue, and, if found against the grantor, must of necessity conclude his case. The *indicia* of a mortgage, if present, are circumstances tending to show a fact. The probative force of these *indicia* is necessarily greater when they co-exist, than when one or more of them are absent. These *indicia* do not preclude the introduction and consideration of other evidence and circumstances; and such other evidence, both direct and circumstantial, may be of such character, and so potent and convincing, (as in this case,) as to overthrow the weight to be given to any or all of the *indicia* of a mortgage. It is for the court to determine, from all the competent evidence in the case, both direct and circumstancial, including any *indicia* of a mortgage present, whether the deed in question was intended by the parties, at the time it was made, to be a mortgage or an absolute conveyance.

It is contended that the plaintiff was of weak intellect at the time the deed was made. It does not appear from the evidence, including his own, that he was incompetent to make the deed. It appears that he was a man of ordinary mind, not of the highest nor of the lowest order of intellect.

There are no new questions of law involved in this case. In cases of this character, the law is fully settled in this State. The burden of proving that a deed absolute on its

face is a mortgage is on the party alleging it. The intention of the parties to the deed at the time it was made is controlling. If, after the deed was made and the transaction completed, there existed no indebtedness from the grantor to the grantee on account of the consideration for the deed, it is not a mortgage. See *Clint* v. *Price.* 4 W. Va. 4; *Davis* v. *Denning*, 12 W. Va. 246; *Lawrence* v. *Duboise*, 16 W. Va. 443; *Hoffman* v. *Ryan*, 21 W. Va. 415; *Vangilder* v. *Hoffman*, 22 W. Va. 1; *Mathews* v. *Sanford*, *supra*; *Sadler* v. *Taylor*, *supra*; *Way* v. *Mayhugh*, 57 W. Va. 184; *Thompson* v. *Davenport*, 1 Wash. 125; *Dabney et al., Exors. etc.*, v. *Green*, 4 H. & M. 101. Tested by these principles, the plaintiff's case fails.

For the reasons stated, the decree complained of is reversed, and the plaintiff's bill dismissed, with costs to the appellant.

*Reversed.*